UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-151-B-W |
| | ) | |
| JAMES MILLS | ) | |

**ORDER DENYING MOTION TO REVEAL IDENTITY
OF "CONFIDENTIAL INFORMANTS"**

Facing sentencing for importation of a controlled substance, James Mills moves to reveal the identity of three "confidential informants" (CIs) referred to in the Government's Sentencing Memorandum. Since this is not an exceptional case "where the defendant can point to some concrete circumstance that might justify overriding both the public interest in encouraging the flow of information and the informant[s]' private interest in [their] own safety," the Court concludes that Mr. Mills failed to meet the requirements of *United States v. Tzannos*, 460 F.3d 128, 139 (1st Cir. 2006), and denies Mr. Mills' Motion for Identification of "Confidential Informants" (Docket # 60) (*Mills' Mot.*).

I.  **STATEMENT OF FACTS**

   A.  **Factual Background and Procedural History**

On September 11, 2009, while attempting to enter the United States Port of Entry at Lubec, Maine, Mr. Mills was found to have 105 eighty-milligram and 5 forty-milligram pills of oxycodone. On January 7, 2010, Mr. Mills pleaded guilty to one count of importing oxycodone in violation of 21 U.S.C. § 952(a). On June 24,

2010, the Government submitted a Sentencing Memorandum. *Government's Sentencing Memorandum* (Docket #50) (*Gov't's Sentencing Mem.*)  The Sentencing Memorandum included statements of three CIs who "revealed that Mills had been involved in smuggling oxycodone for years." *Gov't's Sentencing Mem.* at 2-3. Each CI provided details of Mr. Mills' smuggling operation. Furthermore, each CI purported to have either bought oxycodone pills from Mr. Mills or to have witnessed him with large numbers of pills.

At sentencing, the Government seeks to have the quantities of oxycodone that the CIs attributed to Mr. Mills "included in the calculation of [Mr. Mills'] base offense level" as those quantities were "part of the same course of conduct or common scheme or plan" as the offense for which he was convicted. *Gov't's Sentencing Mem.* at 4 (citing *United States. v. Belskis*, 477 F. Supp. 2d 237, 244 (D. Me. 2007) and *United States v. Eisom*, 585 F.3d 552, 557 (1st Cir. 2009)).

Mr. Mills responds that the calculation should include only the quantity of oxycodone that he possessed at the time of his arrest. *See Mills Sentencing Mem.* at 2 (Docket #53). To that end, Mr. Mills moved on August 26, 2010, for an order that the Government reveal the identities of the CIs so that Mr. Mills may "be able to test the assertions on which the Government was in-part relying for its drug quantity calculations." *Mills' Mot. for Identity of "Confidential Informants"* at 2 (Docket # 60) (*Mills' Mot.*). The Government responded in opposition on September 9, 2010. *Gov't's Resp. in Opp'n. to Mill's Mot. for Identity of "Confidential Informants"* (Docket # 62) (*Gov't's Resp.*).

### B. Legal Contentions

To support his contention that he has a constitutional right to know the identities of the CIs, Mr. Mills relies on a single statement in a 1963 United States Supreme Court case. In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Id.* at 87. Mr. Mills asserts that the CIs' statements, if adopted by the Court, will be material to his punishment. He further argues that the identity of the CIs is "evidence favorable to the accused" because it will allow him to test their assertions, which he maintains are false. Because the statements of the CIs may be material to his punishment and because knowing their identities will be favorable evidence to him, Mr. Mills argues that the Government is obligated to disclose the CIs' identities.

The Government responds that Mr. Mills' argument "ignores the well-settled concept that the evidentiary requirements at a sentencing hearing are less rigorous than at a trial." *Gov't's Resp.* 1. Notably, the Government argues that "a defendant's Sixth Amendment right to confront witnesses against him does not attach during the sentencing phase of a prosecution." *Id.* (citing *United States v. Tardiff*, 969 F.2d 1283, 1287 (1st Cir. 1992)). Therefore, the Government reasons, *Brady* does not entitle Mr. Mills to learn the identities of the CIs, call them as witnesses, or confront them at the sentencing hearing.

The Government explains the specific evidentiary standards courts may use at the sentencing phase. The Court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability." *Id.* at 2 (quoting *United States v. Zapata*, 589 F.3d 475, 485 (1st. Cir 2009)). Furthermore, "the Court has wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing." *Id.* (citing *United States v. Green*, 426 F.3d 64, 66 (1st Cir. 2005)). The Government argues that this approach permits the Court to rely upon information that has never been subject to cross-examination, including hearsay statements of confidential informants if they contain sufficient indicia of reliability. *Id.* (citing *United States v. Brewster*, 127 F.3d 22, 28 (1st Cir. 1997) and *Green*, 426 F.3d at 66). Moreover, the Government cites First Circuit authority for the proposition that "this approach is applicable to drug quantity determinations." *Id.* (citing *Green* 436 F.3d at 66; *Zapata*, 589 F.3d at 485 and *United States v. Scalia*, 993 F.2d 984 (1st Cir. 1993)).

The Government further argues that Mr. Mills' circumstances do not overcome the Government's qualified privilege to withhold the identities of confidential informants. The Supreme Court recognized this privilege in *Roviaro v. United States,* 353 U.S. 53 (1957), reasoning that the privilege "'further[s] and protect[s] the public interest in effective law enforcement,' encouraging citizens to communicate their knowledge of crimes by preserving their anonymity." *Gov't's Resp.* 3 (quoting *Roviaro*, 353 U.S. at 59). Although the Government acknowledges

4

that the privilege is not absolute, the Government contends that the First Circuit has set forth the limited circumstances when the privilege does not apply:

> when the government informant is not an actual participant or a witness to the offense, disclosure is required only in those exceptional cases where the defendant can point to some concrete circumstance that might justify overriding both the public interest in encouraging the flow of information, and the informant's private interest in his or her own safety.

*Gov't's Resp.* at 3 (quoting *Tzannos*, 460 F.3d at 139).

The Government argues that those limited circumstances requiring disclosure do not apply here. After summarily dismissing the possibility that the CIs were actual participants or witnesses to the offense,[1] the Government argues that Mr. Mills speculates as to the value of the CIs' identities to his case but offers nothing concrete to justify overriding either the public or the private interests at stake. In fact, the Government contends Mr. Mills takes a position generally consistent with the information provided by the CIs by admitting that September 11, 2009 was not the first time he had smuggled pills into the United States. Furthermore, the Government emphasizes the private interests of the informants at stake in this case, noting that "certain reports containing information provided by the CIs that were disclosed to defense counsel in this case have been published on the social networking website Facebook." *Id.* at 4. The Government argues that

---

[1] The Government notes that "the information provided by the CIs relates to historical narcotics trafficking by the defendant and his *modus operandi*," not the events surrounding his arrest on September 11, 2009. *Govt.'s Resp.* at 3. None of the CIs was a witness or participant in the September 11, 2009 offense and, therefore, focus is on the second part of the *Tzanno* test.

5

this dissemination represents the kind of risk to informants against which the qualified privilege is designed to protect.

## II. DISCUSSION

Before turning to whether this case falls into the *Tzannos* exception, the Court first considers whether the identities of the CIs may be withheld from Mr. Mills. A criminal defendant does not have the same panoply of rights during sentencing that he enjoyed prior to conviction. Notably, "a defendant's Sixth Amendment right to confront the witness against him does not attach during the sentencing phase." *United States. v. Rodriguez*, 336 F.3d 67, 71 (1st Cir. 2003) (quoting *Tardiff*, 969 F.2d at 1287). During sentencing proceedings, courts may rely on testimony not subject to cross-examination and on hearsay. *See e.g. United States v. Luciano*, 414 F.3d 174 (1st Cir. 2005); *Rodriquez*, 336 F.3d at 71; *Tardiff*, 969 F.2d at 1287. The information must merely be relevant and have "sufficient indicia of reliability to support its accuracy." *United States v. Zapata*, 589 F.3d 475, 485 (1st Cir. 2009). Furthermore, "the district court possesses 'broad discretion' in determining whether evidence is sufficiently reliable for sentencing purposes" and the burden of proof on the Government to allow for the admission of hearsay evidence is "not onerous." *Green*, 426 F.3d at 66, 67.

The First Circuit has expressly held that this lower evidentiary standard applies to hearsay statements of confidential informants. *Green*, 426 F.3d at 67 ("The sentencing court is permitted to rely upon hearsay statements of confidential informants, provided that the information possesses sufficient indicia of reliability

6

to support its probable accuracy." (internal quotation omitted)). In *Green*, the First Circuit found no clear error or abuse of discretion in the trial court's reliance on the hearsay statements of confidential informants in ascertaining drug quantity for sentencing purposes. *Id*. at 66-68. In upholding the trial court's finding of reliability, the *Green* court emphasized that the statements of the confidential informants were "entirely compatible with the other information adduced at trial and summarized in the PSR." *Id*. at 67.

Similarly, the statements of the CIs here are supported by other reliable evidence. First, the Government asserts that between January 1, 2009 and September 11, 2009, when he was arrested, Mr. Mills made at least 231 border crossing trips from Canada into the United States. *Gov't's Sentencing Mem*. at 2. Second, during this interval, the Government discovered that Mr. Mills made 108 currency exchanges in New Brunswick during the sixteen month period preceding his arrest. *Id*. at 7. The total amount of cash he exchanged at a Canadian currency exchange business equaled $369,203 in United States currency for Canadian currency. *Id*. at 2. The Government contends that these currency exchanges likely represent the proceeds from Mr. Mills' drug trafficking and the Probation Office has calculated the drug quantity in this case by dividing the $369,203 by the street value of the drug. *Id*. at 4.

Furthermore, the Government discovered that the amount of Mr. Mills' currency exchanges far exceeded his legitimate income during the sixteen months prior to his arrest. *Gov't's Sentencing Mem*. at 7. In response, Mr. Mills sought to

explain the currency exchanges by pointing to non-drug transactions with third-parties, including cash exchanges from the Defendant's urchin diving with three named men. However, at least two of these men deny providing the funds. *Id.* at 8. These discrepancies allow the inference that the funds exchanged represent drug proceeds. This evidence is consistent with the CIs' statements that Mr. Mills was engaged in drug trafficking before September 11, 2009, and these cumulative facts suggest that the CIs' statements have sufficient indicia of reliability to entitle the Court to rely on them at the sentencing phase without providing Mr. Mills with the names of the CIs.

Turning to the *Tzannos* exception, the Court finds that Mr. Mills has not made an adequate showing to justify disclosure of the CIs' identities. The defendant has the burden of pointing to "some concrete circumstance that might justify overriding both the public interest in encouraging the flow of information and the informant[s]' private interest[s] in [their] own safety." *Tzannos*, 460 F.3d at 139. "Mere speculation as to the usefulness of the informant's testimony . . . is insufficient to justify disclosure of his or her identity." *United States v. Martinez*, 922 F.2d 914, 921 (1st Cir. 1991). "A defendant who merely hopes (without showing a likelihood) that disclosure will lead to evidence supporting suppression has not shown that disclosure will be 'relevant and helpful to the defense . . . or is essential to a fair determination[.]'" *Tzannos*, 460 F.3d at 141 (omission in original) (citing *United States v. Brown*, 3. F.3d 673, 679 (3d Cir. 1993)).

Mr. Mills offers no concrete reason to override the Government's interest in keeping the identities of informants confidential. Instead, his assertion that disclosing their identities will be useful to him is speculative. Mr. Mills posits that knowing the identity of the CIs will allow him "to challenge and to test their assertions," *Mills' Mot.* at 2, but Mr. Mills does not specify why he cannot challenge and test the CI's assertions without revealing their identities, nor does he explain what exculpatory evidence he proposes to derive from their identities. Such conjecture does not amount to a showing that disclosure will be relevant, helpful, or essential to his defense.

In addition, the Government has represented that certain reports containing information provided by the CIs that the Government disclosed to defense counsel were published on the social network website Facebook on a site maintained by the Defendant and his girlfriend. *Gov't's Resp.* at 4. The dissemination of this information relating to the CIs poses an obvious risk to the private interests of the CIs, and weighs against Mr. Mills' attempt to override those interests. Given Mr. Mills' failure to make a practical argument in favor of disclosure and the risks disclosure poses, Mr. Mills has failed to meet his burden.

The one case Mr. Mills cites— *Brady v. Maryland*—is distinguishable. Most glaring is the procedural distinction. *Brady* was a capital murder case which involved evidence withheld by the prosecution before and during trial. 373 U.S. at 84. Here, however, the disclosure Mr. Mills seeks is for a sentencing hearing. These cases are further distinguishable based on the nature of the evidence. In

*Brady*, the prosecution withheld from the defense a statement by the defendant's co-conspirator in which the co-conspirator had "admitted the actual homicide." 373 U.S. at 84-85. The *Brady* Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Mr. Mills has made no showing that disclosure of the CIs' identities would be either material or favorable.

The Court finds no justification to disclose the identities of the CIs. The Court is entitled to rely on the statements of the CIs should it find those statements reliable. Moreover, Mr. Mills has offered no reason for the Court to conclude that disclosure is necessary or helpful to his defense or that his case presents any exceptional circumstances that override the public and private interests in protecting the identities of the CIs.

### III. CONCLUSION

The Court DENIES James Mills' Motion for Identification of "Confidential Informants" (Docket # 60).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 19th Day of October, 2010